O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONE STAR SECURITY AND VIDEO, INC., <br><br> Plaintiff, <br><br> v. <br><br> CITY OF LOS ANGELES; CITY OF SANTA CLARITA; CITY OF RANCHO CUCAMONGA; CITY OF LOMA LINDA., <br><br> Defendants. | Case No. CV 11-2113-ODW(FMOx) <br><br> **ORDER DENYING LONE STAR'S MOTION FOR PRELIMINARY INJUNCTION [33]** |

Under newly enacted statutes, California municipalities may regulate "mobile billboard advertising displays," and impound such a vehicle even if otherwise legally parked on a public street. Plaintiff Lone Star Security and Video, Inc. operates a fleet of these mobile billboards, many of which have been cited or removed by traffic enforcement. Lone Star seeks a preliminary injunction to stop this enforcement, arguing that the Defendant cities violate Lone Star's First Amendment rights because they are impermissibly regulating content-based speech.[1] For the reasons discussed below, Lone Star's Motion for Preliminary Injunction is **DENIED**.

## I. LEGAL STANDARD

A preliminary injunction is an extraordinary remedy never awarded as of right. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff seeking a

---

[1] Having carefully considered the papers filed in support of this motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

preliminary injunction must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and, (4) an injunction is in the public interest. *Id.* at 374; *Stormans, Inc. v. Selecky*, 571 F.3d 960, 978 (9th Cir. 2009). The Court addresses each of these factors in turn.

## II. DISCUSSION

### A. Likelihood of success on the merits

A "mobile billboard advertising display" is defined as "an advertising display that is attached to a wheeled, mobile, nonmotorized vehicle, that carries, pulls, or transports a sign or billboard, and is for the primary purpose of advertising." Cal. Veh. Code § 395.5. Using this definition, Lone Star contends that the mobile billboard regulations are content based because they prohibit only advertising. (Reply 8.) To enforce these regulations, Lone Star asserts that law enforcement must: "(1) determine whether or not the vehicle is displaying any content at all, and (2) determine whether that content is 'advertising' or something else." (*Id.* at 12.) And because these regulations are content based, strict scrutiny applies—a standard that these regulations do not satisfy. (Mot. 19.)

A regulation is content based if either the underlying purpose of the regulation is to suppress particular ideas, or if the regulation singles out particular content for differential treatment. *Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009). If the regulation is found to be content neutral, then its restrictions on time, place, and manner must also be narrowly tailored to serve a significant governmental interest, and must leave open ample alternative channels for communication of that information. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

#### 1. "Advertising" describes the activity, not the content

Lone Star's argument centers solely on the word "advertising," appearing three times in the statute. Though conceding that "advertising" is not defined in the statute, Lone Star suggests that it means commercial speech, as opposed to non-commercial

speech. (Reply 12.) For example, if a mobile billboard displays an American flag, Lone Star contends that this is not "advertising"—but rather, non-commercial speech; at the very least, mixed speech. (Mot. 21.) Thus, because law enforcement will have to distinguish content to assess whether a mobile billboard constitutes "advertising," Lone Star argues these regulations are overbroad. (Reply 12.)

The Court disagrees with this tenuous argument. When looking at the plain language of the statute, the Court finds that the word "advertising" refers to an activity, and not to content. Thus, where "advertising" is used as an adjective in the phrase "advertising display," this connotes that these mobile billboards are used to show something, but not necessarily an advertisement. Where "advertising" is used in the phrase "for the primary purpose of advertising," this suggests that these vehicles are for the purpose of showing the contents of their attached billboards, but does not require that these billboards actually contain advertisements.

So under the statute, a vehicle may be regulated if it carries a billboard, and the vehicle is primarily for the purpose of showing these billboards. For instance, if a vehicle is a bus, taxi, or truck, a billboard may be attached so long as the vehicle is primarily used to transport something other than the billboard, such as people or things. But if a truck is used primarily to ferry a billboard around town—to corral eyeballs to the billboards—then this truck may be regulated. Although the Court envisions some difficulty in determining whether a truck carrying a billboard is primarily used to transport goods or to advertise, that issue is not before the Court. Thus, the Court finds that the word "advertising" in the statute does not conjure a content-based regulation.

### 2. *Defendants' regulations are narrowly tailored*

Narrow tailoring means that enacted regulations "are not substantially broader than necessary to achieve the government's interest." *Reed v. Town of Gilbert*, 587 F.3d 966, 979 (9th Cir. 2009). But the government need not advance this interest in the least restrictive or least intrusive way. *Id.*

The disputed regulations only affect mobile billboards. Signs on bus shelters, stationary billboards, billboards on buses, taxis, and trucks, and decorated vehicles are not regulated. Defendants recall a number of such governmental interests advanced by regulating mobile billboards:

- reducing visual blight;
- reducing significant safety hazards to motorists;
- preservation of on-street parking;
- reducing impairment of visibility of pedestrians and drivers;
- reducing vandalism attracted by and inflicted upon mobile billboards.

(Surreply 9.)

These interests are promoted at the expense of Lone Star's business—but not at the expense of free speech. Ample alternative channels for communication, like the ones described above, exist for speech. Although the regulations foreclose the use of mobile billboards, the Court "cannot invalidate the [regulations] merely because it restricts [a plaintiff's] preferred method of communication." *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1074 (9th Cir. 2006).

The Court finds that Defendants' regulations are narrowly tailored and not unconstitutional. Accordingly, the Court finds that Lone Star has little chance of success on the merits. Because the regulations are found to be content neutral, the Court does not consider the parties' commercial speech arguments under *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980).

**B.   Irreparable harm**

To warrant preliminary injunctive relief, Lone Star must show that irreparable harm is likely, absent such relief. *Winter*, 555 U.S. at 22. Injunctive relief should not be granted if irreparable harm is absent and there exists an adequate remedy at law. *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974). Loss of business or reputation may be irreparable. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1215 (C.D. Cal. 2007). But irreparable harm may not be presumed. *Id.* at 1215.

1 Issuing a preliminary injunction based only on a possibility of irreparable harm is
2 "inconsistent with our characterization of injunctive relief as an extraordinary remedy
3 that may only be awarded upon a clear showing that the plaintiff is entitled to such
4 relief." *Winter*, 555 U.S. at 22.

5 Assuming the regulations are unconstitutional, Lone Star will suffer irreparable
6 harm; the regulations vanquished its advertising business. Further, since Lone Star is
7 no longer in the alarm-security business, this may be its only source of income.
8 (Reply 5.) Based on these considerations, the Court finds that this factor weighs in
9 Lone Star's favor.

**C.  Balance of the equities**

11 In ruling on Lone Star's motion, the Court must also consider the effect that
12 granting or denying injunctive relief would have on the parties. *Amoco Prod. Co. v.*
13 *Vill. of Gambell*, 480 U.S. 531, 542 (1987). For the Defendants, if the injunction is
14 granted, they will have to cease enforcement of these regulations. As discussed
15 above, Defendants' regulations further substantial interests, including providing for
16 the safety of the public. Upon balancing this with the effect on Lone Star's fledgling
17 business if injunctive relief is denied, the Court finds that the balance of the equities
18 tips in the Defendants' favor.

**D.  Public interest**

20 Finally, a plaintiff seeking an injunction must establish that the injunction is in
21 the public interest. *Internet Specialties West, Inc. v. Milon-Digiorgio Enters.*, 559
22 F.3d 985, 993 (9th Cir. 2009). Securing the safety of a city's citizens by reducing
23 traffic hazards from mobile billboards is a legitimate public interest. Defendants'
24 other reasons also further the public interest. An injunction against enforcement of the
25 regulations only serves Lone Star's private business interest. As for Lone Star's
26 clients, they may communicate their advertisements and messages by other means,
27 such as advertisements on city buses. Though other forms of advertisement are
28 typically size restricted—and therefore less eye catching than mobile billboards—the

fact that a client may no longer pay someone to haul around town the most obnoxious means of advertisement does not mean that the injunction is against his interest. Nor is it against the client's interest if now he will have to pay more for a similarly sized advertisement. Thus, the Court finds this factor weighs heavily in Defendants' favor.

**E.     Standing**

As an alternative argument, Defendants contend that Lone Star has not suffered any injury, and therefore lacks standing to sue. Defendants base this argument on Lone Star's revoked alarm-service license. Though this fact may be true, this revocation does not preclude Lone Star from operating other lawful activities, such as advertising for third parties. The Court does not need to determine at this time whether Lone Star actually offers advertising services to third parties, or only advertises on its own behalf. Therefore, the Court finds that Lone Star has standing, and this Court has jurisdiction over its claims.

## III.     CONCLUSION

Upon balancing the foregoing preliminary injunction factors, the Court finds that Lone Star failed to demonstrate that it is entitled to preliminary injunctive relief. Accordingly, Lone Star's Motion for Preliminary Injunction is **DENIED**.

**IT IS SO ORDERED.**

July 2, 2012

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**