**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LONE STAR SECURITY & VIDEO, INC., <br><br> Plaintiff, <br><br> v. <br><br> CITY OF LOS ANGELES; CITY OF SANTA CLARITA; CITY OF RANCHO CUCAMONGA; CITY OF LOMA LINDA, <br><br> Defendants. | Case No. 2:11-cv-2113-ODW(FMOx) <br><br> **ORDER DENYING PLAINTIFF LONE STAR SECURITY'S MOTION FOR SUMMARY JUDGMENT [78] AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [82]** |

## I. INTRODUCTION

The present Cross-Motions for Summary Judgment ask this Court to determine the constitutionality of four city ordinances that prohibit the parking of "mobile billboard advertising displays" on city streets. The four ordinances are virtually identical and mirror the language of the state legislative act granting municipalities across California the authority to pass these ordinances. Plaintiff Lone Star Security and Video, Inc. ("Lone Star") is pursuing only a facial challenge to the ordinances, arguing that they should be struck down for violating the First Amendment. The parties have stipulated to the facts in this case, so only questions of law remain.[1] (*See*

---

[1] This case was consolidated with *Sami Ammari v. City of Los Angeles*, No. 2:12-cv-04644-ODW (MRWx) (case filed May 29, 2012). *Ammari* involves a separate, although closely related, Los Angeles city ordinance regulating advertising signs on motor vehicles. Cross-Motions for Summary Judgment have been filed in that action as well.

Stipulated Facts ("Stip."), ECF No. 80.)  Having considered all arguments in support of and in opposition to the present Cross-Motions for Summary Judgment, the Court finds that the ordinances at issue are constitutional as content-neutral reasonable time, place, and manner restrictions on speech.  Accordingly, the Court hereby **DENIES** Lone Star's Motion for Summary Judgment (ECF No. 78) and **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 82).

## II.   FACTUAL BACKGROUND

On August 25, 2010, the California Legislature passed Assembly Bill ("AB") 2756, which took effect on January 1, 2011.  (Stip. ¶ 1.)  AB 2756 amended portions of the California Vehicle Code to explicitly authorize cities and counties to regulate "mobile billboard advertising displays."  (Stip. Ex. 1.)  A "mobile billboard advertising display" is defined as "an advertising display that is attached to a wheeled, mobile, nonmotorized vehicle, that carries, pulls, or transports a sign or billboard, and is for the primary purpose of advertising." (*Id.*)  In enacting AB 2756, the California Legislature stated that communities across the state were "experiencing a surge in mobile billboards" and that vehicles and trailers carrying mobile billboards were being parked on city streets for long periods of time, sometimes for several days. (*Id.*)  In addition, the California Legislature included the following findings:

> Not only are mobile billboards a visual blight, but they pose a significant safety hazard when motorists are forced to veer around them into the next lane of traffic.  Mobile billboards also reduce available on-street parking and impair the visibility of pedestrians and drivers.

(*Id.*)   Defendants in this case—the Cities of Los Angeles, Santa Clarita, Rancho Cucamonga, and Loma Linda ("Cities")—all passed ordinances in direct response to AB 2756.

The Los Angeles City Council passed Ordinance No. 181495 on December 17, 2010.  (Stip. ¶ 3.)  The ordinance created new Los Angeles Municipal Code section 87.53.  (*Id*.)   Section 87.53 incorporates by reference the California Legislature's

amendments to the Vehicle Code under AB 2756.  The ordinance makes it "unlawful for any person to park a mobile billboard advertising display, as defined under Section 395.5 of the California Vehicle Code, on any public street or public lands in the City of Los Angeles." (Stip. ¶ 4, Ex. 2.)  Penalties for parking mobile billboard advertising on city streets mirror those authorized by the California Legislature. (Stip. Exs. 1–2.)

On April 12, 2011, the City of Santa Clarita adopted Ordinance No. 11-7, creating new section 12.84 of the Santa Clarita Municipal Code.  (Stip. ¶ 5.)  The ordinance states, "It shall be unlawful for any person to park a Mobile Billboard Advertising Display on any public street or public lands in the City of Santa Clarita." (Stip. ¶ 6, Ex. 3.)   Like the City of Los Angeles, Santa Clarita's ordinance incorporates by reference the California Legislature's amendments to the Vehicle Code including penalties and the definition of "mobile billboard advertising display." (*Id.*)

The City of Rancho Cucamonga passed Ordinance No. 839 on April 6, 2011. (Stip. ¶ 7.)  The ordinance created new section 10.52.080 of the Rancho Cucamonga Municipal Code, making it "unlawful for any person to park, stand, or otherwise allow to remain upon any City street, any mobile billboard advertising display." (Stip. ¶ 8, Ex. 4.)  Once again, the city incorporated by reference the California Legislature's authorized penalties and definition of a "mobile billboard advertising display." (*Id.*)

On May 10, 2011, the City of Loma Linda adopted Ordinance No. 704, which created new section 10.36.070 of the Loma Linda Municipal Code.  (Stip. ¶ 9.)  Loma Linda's ordinance states, "It is unlawful for any person to park, stand, or otherwise allow to remain upon any City street, any mobile billboard advertising display." (Stip. ¶ 10, Ex. 5.)  As with the other three city ordinances, the amendments to the California Vehicle Code are explicitly referenced including penalties and definitions. (*Id.*)

Lone Star filed suit on March 11, 2011, challenging the City of Los Angeles ordinance on both federal and California constitutional grounds. (ECF No. 1.)  The

Complaint was amended on June 6, 2011, to add the Cities of Santa Clarita, Rancho Cucamonga, and Loma Linda as defendants. (ECF No. 17.) Lone Star is a corporation that operates a fleet of mobile billboards, and has been subject to enforcement under the ordinances at issue. (*Id.* at ¶¶ 2, 7–8.) The Amended Complaint asserts claims for free speech, due process, and privileges or immunities clause violations under both the United States and California Constitutions. (*Id.*)

This Court denied Lone Star's Motion for Preliminary Injunction on June 2, 2012, finding that Lone Star had not demonstrated a likelihood of success on the merits. (ECF No. 53.) In denying the preliminary injunction, the Court held that the ordinances are not content-based restrictions on speech. (*Id.*) The Ninth Circuit affirmed this Court's denial of the preliminary injunction on March 21, 2013, holding that the ordinances are in fact content-neutral. (ECF No. 70.) The parties have now filed Cross-Motions for Summary Judgment to determine whether the ordinances are constitutional as reasonable time, place, and manner restrictions. (ECF Nos. 78, 82.)

### III. LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial. *Id.*; Fed. R. Civ. P. 56(c). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## IV. DISCUSSION

The parties have stipulated to the facts in this case, namely the enactment of the relevant ordinances and their admissibility. (Stip. ¶¶ 1–10.) In addition, the parties have stipulated that Lone Star is pursuing only a facial challenge to the ordinances. (Stip. ¶ 11.) While the Amended Complaint contains claims for violations under the Fourteenth Amendment as well as under the California Constitution, disposition of this case and the instant Cross-Motions for Summary Judgment turn entirely on the application of well-established First Amendment law. Lone Star concedes this point. (Lone Star Opp'n 2:6–11.) Accordingly, the Court will first address the validity of the ordinances under the First Amendment and then address any remaining claims.

## A. Facial Challenges Under the First Amendment

"When the Government restricts speech, the Government bears the burden of proving the constitutionality of it." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000). Nonetheless, a typical facial challenge to a law's validity requires "that no set of circumstances exists under which [the law] would be valid," or that the law "lacks any 'plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 472 (2010); *see also United States v. Salerno*, 481 U.S. 739, 745 (1987); *Washington v. Glucksburg*, 521 U.S. 702, 740 n.7 (1997) (Stevens, J., concurring in judgments). In the First Amendment context, however, a law may also be facially invalid as overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Stevens*, 550 U.S. at 473; *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 944–45 (9th Cir. 2011) (en banc). This overbreadth doctrine exists "out of concern

that the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech . . . ." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003); *Comite de Jornaleros*, 657 F.3d at 944. This concern for chilling protected speech means that a party seeking to strike down a statute for overbreadth is not required to demonstrate that his own conduct could not be regulated by a more narrowly drawn statute. *See Comite de Jornaleros*, 657 F.3d at 944; *Parker v. Levy*, 417 U.S. 733, 759 (1974).

Nevertheless, facial challenges are disfavored for several reasons. They "often rest on speculation" and "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding on it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450. (2009) (internal quotations omitted). Facial challenges also "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* at 451.

Turning to Lone Star's facial challenge, there is no question here that the ordinances bear upon protected expression under the First Amendment. The ordinances prohibit parking of "mobile billboard advertising displays" on public streets and public lands. (Stip. Exs. 2–5.) "Advertising" is a protected form of speech and can convey a "broad range of different kinds of messages." *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 500–01 (1981); *see also Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 803 (1984); *City & Cnty. of S.F. v. Eller Outdoor Adver.*, 192 Cal. App. 3d 643, 656 (Ct. App. 1987). Moreover, public streets are a traditional public forum under First Amendment law. *Snyder v. Phelps*, 131 S.Ct. 1207, 1218 (2011). Therefore, the Court must turn to the well-established principles guiding regulation of protected speech in a public forum to determine the facial validity of the ordinances.

/ / /

**B.    Reasonable Time, Place, and Manner Restrictions**

In public places, such as streets and sidewalks, content-based restrictions on speech have to meet strict scrutiny, meaning that the regulation must be necessary to serve a compelling state interest. *Comite de Jornaleros*, 657 F.3d at 940.  On the other hand, "[f]or content-neutral regulations, the State may limit 'the time, place, and manner of expression' if the regulations are 'narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" *Id.* (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)).  The Court finds that the ordinances are constitutional as reasonable time, place, and manner restrictions on speech.

**1.    Content-Neutral**

The issue of content-neutrality with respect to the ordinances has already been addressed by this Court.  In denying Lone Star's Motion for Preliminary Injunction, this Court held that the ordinances are content-neutral.  (ECF No. 53.)  The Ninth Circuit affirmed that decision, also holding that the ordinances are content-neutral. (ECF No. 70.)  Moreover, Lone Star and the Cities agree that the law-of-the-case doctrine controls the issue of content-neutrality.  (Lone Star Mot. 16:4–12; Cities Mot. 6:9–8:5.)

Under the law-of-the-case doctrine, "[A] court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case." *Gonzalez v. Arizona*, 677 F.3d 383, 389, n.4 (9th Cir. 2012).  The doctrine can apply even when the issue arises from a preliminary-injunction ruling, particularly where legal conclusions have been made and no new evidence has been adduced.[2]  *See Reed v. Town of Gilbert, Ariz.*, 707 F.3d 1057, 1067 (9th Cir. 2013) (applying the law-of-the-case doctrine after preliminary injunction appeal involving

---

[2] Exceptions to the law-of-the-case-doctrine apply when (1) the decision is "clearly erroneous and enforcement would work a manifest justice;" (2) intervening controlling authority makes reconsideration appropriate; or (3) substantially different evidence was adduced at a subsequent trial. *Reed v. Town of Gilbert, Ariz.*, 707 F.3d 1057, 1067 n.9 (9th Cir. 2013).

1  similar First Amendment issues).  Here, Lone Star is raising a facial challenge and
2  there have been no subsequent amendments to the ordinances.  This case has turned
3  on issues of law since its outset.  Simply put, nothing has changed since this Court
4  ruled on the preliminary injunction, finding that the ordinances were content-neutral.
5  The parties appear to be in agreement on that point.  (Lone Star Mot. 16:4–12; Cities
6  Mot. 6:9–8:5.)  Accordingly, the Court applies the law-of-the-case doctrine and finds
7  that the ordinances have already been deemed content-neutral by both this Court and
8  the Ninth Circuit.[3]

## 2.    Narrowly Tailored to Serve a Significant Government Interest

10  The parties do not dispute that the Cities' asserted government interests in
11  traffic safety, parking control, and aesthetics constitute significant, or substantial,
12  government interests.  (Lone Star Mot. 19:13–19; Cities Opp'n 4:20–5:13. )  Case law
13  has repeatedly confirmed that these goals are indeed "substantial" and the Court finds
14  no reason to conclude otherwise.  *See Metromedia*, 453 U.S. at 507–08 (plurality
15  opinion); *Taxpayers for Vincent*, 466 U.S. at 807 (reaffirming the holding from
16  *Metromedia*); *One World One Family Now v. City & Cnty. of Honolulu*, 76 F.3d 1009,
17  1013 (9th Cir. 1996).  Instead, the Court focuses its attention on the majority of the
18  parties' arguments, which concern whether the ordinances are narrowly tailored to
19  serve the substantial interests of traffic safety, parking control, and aesthetics.

20  To be narrowly tailored, a regulation should "achieve its ends without
21  restricting substantially more speech than necessary."  *Long Beach Area Peace
22  Network v. City of Long Beach*, 574 F.3d 1011, 1024 (9th Cir. 2008).  The regulation
23  will be valid if it "promotes a substantial government interest that would be achieved

---

[3] The ordinances are content-neutral because they do not "distinguish favored speech from disfavored speech on the basis of the ideas or views expressed." *Reed v. Town of Gilbert, Ariz.*, 587 F.3d 966, 977 (9th Cir. 2009).  A display of *any* message falls within the definition of "advertising" and is sufficient to establish content-neutrality.  An officer enforcing one of the ordinances need not consider the content of a billboard on a vehicle. *See S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1145 (9th Cir. 1998).  The officer is only required to distinguish between vehicles whose primary purpose is advertising and vehicles that have a different primary purpose, such as transporting passengers or carrying cargo.  (Stip. Ex. 1.)

less effectively absent the regulation." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989). The Court may consider "obvious alternatives," but narrow tailoring does not require the regulation to be the "least restrictive alternative." *Id.* at 798–99; *Long Beach Area Peace Network*, 574 F.3d at 1025.

In this case, Lone Star contends that the ordinances are not narrowly tailored to the interests of traffic safety, parking control, and aesthetics, because the ordinances really operate as blanket bans on an entire medium of speech. (Lone Star Reply 4:12–21.) Lone Star argues that the stated interests are better served by other state and local laws, such as vehicle-registration requirements and laws on impeding traffic flow. (Lone Star Mot. 20:3–20.) In addition, Lone Star contends that the ordinances ban all "advertising" without mention of how attractive or unattractive the advertising may be, and without mention of proper placing in relation to traffic flow. (*Id.*) Lone Star rests its arguments heavily on the holding in *Comite de Jornaleros*, where the Ninth Circuit struck down a city ordinance that prohibited day laborers from soliciting motorists anywhere in the city. *Comite de Jornaleros*, 657 F.3d at 948–51.

On the other hand, the Cities argue that the ordinances are narrowly tailored because they directly address the substantial interests of traffic safety, parking control, and aesthetics, and do not foreclose an entire medium of speech. (Cities Mot. 10:12–16; Cities Opp'n 6:3–16.) According to the Cities, the ordinances do not prohibit all mobile advertising, only the parking of mobile billboard advertising displays that have a primary purpose of advertising. (Cities Opp'n 6:7–16.) Vehicles bearing advertising are still permitted, and can even park on public streets, so long as the vehicle is motorized or has some other primary purpose beyond advertising. (*Id.*)

The Court finds the ordinances are narrowly tailored. First, the Court finds the holding in *Comite de Jornaleros* distinguishable. In that case, the Ninth Circuit considered an anti-solicitation ordinance that barred individuals from soliciting "employment, business, or contributions from an occupant of any motor vehicle." *Comite de Jornaleros*, 657 F.3d at 940. The Ninth Circuit held that the ordinance was

overinclusive because it barred *all* solicitation on public streets and sidewalks. *Id.* at 948–950. Unlike in *Comite de Jornaleros*, the ordinances at issue here do not ban all advertising, nor do they ban all advertising on motor vehicles. The ordinances only prohibit the parking of mobile billboard advertising displays that have a primary purpose of advertising. Motor vehicles may display advertising if they have another primary purpose, such as transporting passengers or carrying cargo. Moreover, the ordinances only prohibit the parking of these mobile billboard advertising displays. The ordinances restrict only a particular manner in which advertising is conducted on vehicles.[4] They do not restrict all advertising on vehicles. *Cf. Maldonado v. Morales*, 556 F.3d 1037, 1046 (9th Cir. 2009) (upholding content-neutral advertising ban because it did not foreclose or nearly foreclose on an entire medium of speech).

Furthermore, the Court finds that the ordinances directly address the substantial government interests asserted by the Cities. As to aesthetics, the ordinances prevent streets from being cluttered with signage. Lone Star's assertion that the ordinances should address the attractiveness of the advertising would actually be more problematic as potential content-based restrictions on speech. The ordinances are also appropriately tailored to the Cities' interests in traffic safety and parking control. As the California Legislature indicated in passing AB 2756, the findings of which the Cities adopted in their ordinances, mobile billboard advertising displays limit available on-street parking and restrict visibility for motorists. On-street parking is available to drivers for the purpose of temporarily leaving a vehicle while the driver visits a local business, residence, or other establishment. On-street parking is not made available primarily for advertising. Also, the prohibition on parking mobile

---

[4] In the *Ammari* case, the City of Los Angeles further restricts advertising on vehicles, requiring that advertising be "painted directly upon or permanently affixed to the body of, an integral part of, or fixture of a motor vehicle for permanent decoration, identification, or display and that do not extend beyond the overall length, width or height of the vehicle." L.A. Mun. Code § 87.54. The Court finds that the *Ammari* ordinance has no colorable effect on the discussion of narrow tailoring or ample alternative channels of communication in this case. The City of Los Angeles ordinance included in this facial challenge is still narrowly tailored and leaves open ample alternative channels of communication regardless of whether the *Ammari* ordinance is in effect.

billboard advertising displays clearly addresses the visibility problem to drivers because these displays will not be present.  The Cities have demonstrated that the ordinances promote substantial government interests "that would be achieved less effectively absent the regulation."  *Ward*, 491 U.S. at 799 (quoting *United States v. Albertini*, 471 U.S. 675, 689 (1985)).

Although Lone Star has supplied examples of alternative methods in which the Cities can address their substantial interests, the First Amendment does not require the Cities to choose the "least restrictive or least intrusive means" of achieving its goals. *Ward*, 491 U.S. at 799.  The ordinances at issue do not "regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance [the Cities'] goals."  *Id.*  Accordingly, the Court finds that the ordinances are narrowly tailored to achieve the substantial government interests of aesthetics, traffic safety, and parking control.

### 3. Ample Alternative Channels of Communication

A time, place, and manner regulation must also leave open ample alternative channels of communication.  *S.O.C., Inc.*, 152 F.3d at 1145.  Lone Star contends that the ordinances do not leave open alternative channels of communication, because there are no roadside locations in the Cities where mobile billboard advertising displays are permitted.  (Lone Star Mot. 20:21–21:1.)  On the other hand, the Cities argue that the ordinances should be viewed in a broader context.  The ordinances leave open ample alternative methods of advertising to the same audience, such as free-standing billboards, busses, taxis, and bus benches to name a few.  (Cities Mot. 10:12–16.)  The Court agrees with the Cities' assessment.

The First Amendment "does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981).  But alternatives are not adequate if they do not allow the speaker to reach her intended audience, the location is part of the expressive message, or there are no opportunities for

spontaneity. *Long Beach Area Peace Network*, 574 F.3d at 1025. The cost and convenience of alternatives may also be a factor. *See City of Ladue v. Gilleo*, 512 U.S. 43, 57 (1994).

The intended audience for these mobile billboard advertising displays is drivers and passersby on the sidewalk. As the Cities have pointed out, this audience can still be reached in a number of other ways. The Court fails to see why an advertiser's message cannot be communicated just as effectively on a bus bench or traditional free-standing billboard. In addition, since advertising is allowed on vehicles such as busses or taxis and on bus benches, the Court finds that the ordinances do not foreclose a particular location for expressive activity. The public streets and roadways are still wide open for advertising; only one specific manner of advertising—parking mobile billboard advertising displays that have a primary purpose of advertising—is foreclosed. While cost and convenience of alternatives should be considered, and parking on a public street may be inexpensive or even free, the First Amendment does not guarantee a right to the cheapest and most convenient means of advertising. Moreover, the record is devoid of any information to suggest that mobile billboard advertising displays are in fact the cheapest or most convenient means of advertising on public streets. Therefore, the Court finds that ample alternative channels of communication exist in the Cities to advertise on public streets and public lands.

The Cities have established that the ordinances are content-neutral, narrowly tailored to significant government interests, and leave open ample alternative channels of communication. Therefore, the ordinances satisfy the requirements for reasonable time, place, and manner restrictions and do not violate the First Amendment.

## C. Remaining Claims in the Amended Complaint

Lone Star concedes that disposition of this entire action turns on the application of First Amendment law. (Lone Star Opp'n 2:6–11.) Nevertheless, the operative pleading in this case, the Amended Complaint, raises claims not only under the First Amendment but also under the Fourteenth Amendment and the California

1  Constitution.  Accordingly, the Court finds it necessary to address these claims to
2  properly grant summary judgment in favor of the Cities.

3  **1.  California Constitution Free Speech Clause**

4  Lone Star alleges in the Amended Complaint that the ordinances are facially
5  invalid under the California Constitution's free-speech provision, article I, section
6  2(a).  (Am. Compl. ¶¶ 31–33.)  Since California courts "employ the same time, place
7  and manner test as the federal courts" in analyzing the California's free-speech clause,
8  *Prigmore v. City of Redding*, 211 Cal. App. 4th 1322, 1336 (Ct. App. 2012), the
9  Court's First Amendment findings above apply equally to Lone Star's article I, section
10  2(a) claim.

11  **2.  Fourteenth Amendment Substantive Due Process**

12  Lone Star's Amended Complaint also asserts a violation of substantive due
13  process under the Fourteenth Amendment.  (Am. Compl. ¶¶ 25–27.)  The Cities argue,
14  however, that the specific First Amendment rubric supplants the broader, more
15  nebulous due-process protection under the *Graham* rule.  *See Graham v. Connor*, 490
16  U.S. 386, 395 (1989) (holding that the Fourth Amendment's "explicit textual source
17  of constitutional protection" applied instead of "the more generalized notice of
18  'substantive due process'").  The Cities are correct that the First Amendment analysis
19  applies in this case in lieu of substantive due process under the Fourteenth
20  Amendment.  *See Corales v. Bennett*, 567 F.3d 554, 569 n.11 (9th Cir. 2009) (noting
21  that denial of the plaintiffs' First Amendment claims foreclosed consideration of their
22  substantive due-process claim); *Hufford v. McEnaney*, 249 F.3d 1142, 1151 (9th Cir.
23  2001) ("In this case, because the First Amendment explicitly covers [plaintiff's]
24  claim, the First Amendment, not the Fourteenth Amendment's guarantee of
25  substantive due process, should guide the analysis of the [plaintiff's] claim[s].").

26  **3.  California Constitution Substantive Due Process**

27  The Amended Complaint states a violation of substantive due process under the
28  California Constitution as well.  (Am. Compl. ¶¶ 31–33.)  California Constitution

article I, section 7(a) provides that a "person may not be deprived of life, liberty, or property without due process of law." To survive scrutiny under this clause, a law need only be reasonably related to a proper legislative goal. *Coshow v. City of Escondido*, 132 Cal. App. 4th 687, 711 (Ct. App. 2005). Since the First Amendment's time, place, and manner rubric employs a more heightened standard, the ordinances at issue here are valid under article 1, section 7(a) of the California Constitution as well.

### 4. Fourteenth Amendment Privileges or Immunities Clause

Lone Star also raises a claim for a violation of the Fourteenth Amendment's privileges or immunities clause. (Am. Compl. ¶¶ 28–30.) However, "[n]atural persons, and they alone, are entitled to the privileges and immunities which Section 1 of the Fourteenth Amendment secures for 'citizens of the United States." *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 514 (1939). Lone Star is a corporation, not a natural person, so the Fourteenth Amendment's privileges or immunities clause affords no relief.

### 5. California Constitution Privileges and Immunities Clause

Lone Star's last remaining claim states that the ordinances violate the privileges and immunities clause contained in the California Constitution. (Am. Compl. ¶¶ 34–37.) The California Constitution's Privileges and Immunities Clause provides that a "citizen or class of citizens may not be granted privileges or immunities not granted on the same terms to all citizens." Cal. Const., art. I., § 7(b). As with Lone Star's federal privileges or immunities claim, Lone Star is not entitled to the protection of California's privileges and immunities clause because a corporation it is not a "citizen." *City and Cnty. of S.F. v. Flying Dutchman Park, Inc.*, 122 Cal. App. 4th 74, 87 (Ct. App. 2004).

/ / /

/ / /

/ / /

/ / /

## V.  CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiff Lone Star's Motion for Summary Judgment (ECF No. 78) and **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 82).  A judgment will issue.

**IT IS SO ORDERED.**

December 20, 2013

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**